FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA APR 17 A 11: 54
Alexandria Division

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| RANJITH KEERIKKATTIL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No: 1:16-cv-827-CMH-MSN |
| | ) |
| STACY SAWIN, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

Plaintiff, Ranjith Keerikkattil, hereby submits his Memorandum of Points and Authorities in support of their motion for an order compelling Defendants Deloitte LLP, Deloitte Consulting LLP, and Deloitte Services LP, (collectively "Deloitte Defendants") to 1) Provide comprehensive responses, unencumbered by objection, to Plaintiff's Interrogatories and Requests for Production of Documents as set forth herein; 2) Supplement their incomplete production of responsive documents; and 3) Appear and testify at the Rule 30(b)(6) deposition.

## FACTUAL BACKGROUND

On May 30, 2015, Plaintiff, Ranjith Keerikkattil ("Mr. Keerikkattil") sent Stacy Sawin ("Ms. Sawin") a polite letter via e-mail titled "FPS Future Guidance and Cease & Desist Letter" expressing his desire to have no direct involvement with her on the FPS contract. *See* Am. Compl., Ex. F.

On June 1, 2015, Ms. Sawin contacts her father Andrew Sawin to dig up dirt on Mr. Keerikkattil. In response, Andrew Sawin sent Ms. Sawin the following text message at 12:45 PM

stating, "Previous allegations of stalking behavior at University of Maryland regarding Mr. Keerikkattil. He subsequently accused the female victim of harassment. Sounds like a pattern. All found on Google. Do you have legal coverage? Might be good to consult an attorney". *See* Ex. A at DELOITTE008670. Ms. Sawin responded back at 1:02 PM stating, "I'm looking into legal coverage now. A little overwhelmed again. Glad you found that". *Id.* After a few minutes at 1:21 PM, Ms. Sawin sends the following text to Vikram Rajan stating. "He's started to turn this whole thing against me. Also, it turns out he has history of stalking people and then accusing them of harassment. Google him". *Id.* She then follows up at 3:50 PM with another text message stating "I'm taking actions to protect myself because he sent me a cease and desist letter and eluded to me asking him to lie to my manager". *Id.* Mr. Keerikkattil neither has history of stalking people nor did he ask Ms. Sawin to lie to her Manager. At 4 PM, she sends another text message to Mr. Rajan that states "I think he's going to take me to court for emotional distress and damaging his reputation, since he has done it before". *Id.* Most outrageously at 8:48 PM, Ms. Sawin sends a text message to Sam Magier that states, "Thanks Sam! This guy is quite a piece of work. I hope Deloitte fires him". *Id.* This removes any questions on what Ms. Sawin's intent were.

Ms. Sawin also contacts her Deloitte Counselor Kash Tajammul and lies to him that Mr. Keerikkattil brought her on to the CMS proposal because he was interested her. She also lied that Mr. Keerikkattil told her that she is no longer needed on the proposal because she did not accept his gifts. *See* Ex. B at DELOITTE006680. Mr. Keerikkattil never ever told Ms. Sawin that she is no longer needed on the CMS proposal. It is obvious that she was trying to manufacture a sexual harassment and retaliation scenario. Mr. Tajammul reports and restates Ms. Sawin's lies to Monique Mignon, a Deloitte Talent/HR employee. *Id.*

2

On June 3, 2015, Ms. Sawin sends Leslie Moore Garcia, a Deloitte HR employee an e-mail containing the following hyperlink: https://casetxt.com/case/keerikkattil-v-hrabowski. This was intentionally done to portray Mr. Keerikkattil in a negative light at the beginning of the investigation with the intent to have him fired, something that she had desired. *See* Ex. C at DELOITTE005387. Ms. Sawin also writes up a document titled "The interactions Between Stacy Sawin and Ranjith Keerikkattil" with multiple false and defamatory statements and calls it the most important document and submits it to Deloitte HR. *See* Ex. D at DELOITTE008867.

Stacy Sawin also cleverly deleted and altered selected text messages and apps from her Deloitte corporate phone. This became known During Deloitte's investigation when a text message that stated, "Stacy I want to eat you" sent from Vikram Rajan to Stacy Sawin was missing from the text messages obtained from her phone. However, Vikram Rajan vividly recalled sending her that text message. *See* Ex. E at DELOITTE008846. In fact, even Deloitte's own eDiscovery Litigation Analyst, Aleta Jacobson clearly points to deletion of text messages by Stacy Sawin. *See* Ex. F at DELOITTE005563.

Based on Ms. Sawin's lies, Deloitte HR interviewed Mr. Keerikkattil's superiors and subordinates for any improper behaviors or communications from Mr. Keerikkattil towards Ms. Sawin. After interviewing his superiors Ritesh Verma & Bheeshma Tumati, as well as his subordinates Laura Amster & Julie Gi Kim, Deloitte was unable to find any improper behaviors or communications from Mr. Keerikkattil towards Ms. Sawin. *See* Ex. G at DELOITTE008776-78, 6777-81, 6771-74 and 6775-76. After failing to find any improper conduct, Alicia Carberry who from the beginning wanted to fire Mr. Keerikkattil lied to Derek Masengale that Mr. Keerikkattil should be fired for lying to her. She even prepared the script for Derek Masengale. *See* Ex. H at DELOITTE008747-48.

3

Alicia Carberry also ensured that Mr. Keerikkattil's complaint against Ms. Sawin gets resolved in her favor. Despite the fact that Deloitte's own eDiscovery Litigation Analyst stated that Stacy Sawin may have deleted text messages and apps, Ms. Carberry and her subordinate Leslie Moore Garcia made no efforts to retain her corporate phone or laptop hard drive, or to recover these deleted messages and apps. Instead they lied to Deloitte leadership stating that they did not recover any explicit text messages, lync messages or e-mails. *See* Ex. I at DELOITTE005721. This is in stark contrast to her conduct towards Mr. Keerikkattil where she immediately confiscated his corporate phone and laptop and specifically instructed to Deloitte IT that these devices should be preserved. *See* Ex. J at DELOITTE005366. Despite the fact that Deloitte's eDiscovery Litigation Analyst found Snapchat installed in her corporate phone, which is a direct violation of APR 208.007, Ms. Carberry and her subordinate Leslie Moore Garcia reported to Deloitte leadership that Ms. Sawin did not violate any Deloitte policies. APR 208.007 states that installing, using or downloading any unauthorized software, applications or technology services is prohibited. *See* DELOITTE008850. Mr. Keerikkattil's claim that Ms. Sawin was fired from her Bureau of Engagement & Printing ("BEP") project due to failure to obtain security clearance was found to be true. *Id; see also* Ex. K at DELOITTE005340.

Deloitte always had a strong preference for Ms. Sawin, a female over Mr. Keerikkattil, a male. Upon Ms. Sawin's insistence[1], Deloitte Defendants' hire Eric J. Janson and his law firm Seyfarth Shaw LLP to defend against Plaintiff's anticipated Federal lawsuit. Ms. Sawin, Deloitte Defendants and Mr. Janson concocts a plan to accuse Plaintiff of stalking Ms. Sawin and then use the stalking claim to destroy Plaintiff's credibility in this instant case. Together, they submit

---

[1] Both Ms. Sawin and Mr. Janson graduated from Lehigh University and knew each other through their alma mater. *See* Am. Compl., Exs. G & S.

4

a document with multiple false statements about Plaintiff to DC MPD First District Police Station with the intend of bringing frivolous criminal stalking charges against him.

Ms. Sawin and Mr. Janson then file a frivolous and defamatory Civil Restraining Order ("CRO") petition in D.C. Superior Court that gets summarily dismissed. After failing the CRO petition, Ms. Sawin and Mr. Janson attempt a second bite at the apple by filing a Civil Protection Order ("CPO") petition in D.C. Superior Court. Mr. Janson insisted that Deloitte Defendants specifically hire Meredith S. Campbell ("Ms. Campbell"), his intimate friend from Lehigh days[2], and her law firm Shulman, Rogers, Gandal, Pordy and Ecker P.A. ("SRGPE"). Mr. Janson also obtains funding for Ms. Campbell and SRGPE from Deloitte for representing Ms. Sawin in the CPO proceeding. Michael J. Lichtenstein, General Counsel for SRGPE has already admitted that Deloitte under Mr. Janson's direction has been paying SRGPE's (and his friend's) legal bills for representing Stacy Sawin. *See* ECF No. 67-1.

Mr. Janson also used his influence with the United States Attorney's Office for the District of Columbia to initiate and sustain a meritless misdemeanor prosecution against Plaintiff. Any doubts regarding this were cleared when on September 8, 2016 Mr. Janson, as Deloitte's agent personally appeared in D.C. Superior Court and demanded to John Giovannelli, an AUSA that he should bring additional criminal charges to threaten and intimidate Plaintiff. Plaintiff's claims are corroborated by Allison Baker Shealy, an SRGPE attorney and counsel for Ms. Sawin who witnessed Mr. Janson's interactions with Mr. Giovannelli. *See* ECF No. 67-2.

---

[2] Mr. Janson and Ms. Campbell both graduated from Lehigh University in 1998. *See* Am. Compl., Ex. S. After Lehigh, Ms. Campbell went to Harvard Law and Mr. Janson ended up at bottom-tier George Mason Law.

## PROCEDURAL HISTORY

On December 5, 2016, Plaintiff served his First Request for Production of Documents to Deloitte Defendants. On December 23, 2016, Deloitte Defendants filed their objections to Plaintiff's request. *See* ECF No. 64-1. Deloitte Defendants failed to produce the responsive documents by the due date stating that they would only do so after the stipulated protective order is signed by the Court. *See* ECF No. 64-2. The parties had agreed to a stipulated protective order as early as December 23, 2016. *See* Ex. L. However, Deloitte Defendants waited until January 11, 2017, to file the motion for the stipulated protective order. *See* ECF No. 49. This was intentionally done to delay production. The protective order was rejected by the Court due to its failure to comply with Local Rules, despite the fact that it was filed by Christine Costantino, a member of EDVA bar. All said and done, I took until January 30, 2017 until a protective order was approved by the court. After the protective order was approved, Deloitte Defendants made a limited production that did not include responsive documents requested in Plaintiff's Requests for Production Nos 2-5. After over a month of e-mail correspondence, meet-and-confer calls and a motion to compel, Deloitte Defendants finally produced some responsive documents on March 24, 2017, 79 days after they were originally due. Upon review of Deloitte's extremely late production, it became clear that Deloitte's production was incomplete. Deloitte Defendants also failed to provide responses to Requests 7 and 8 from Plaintiff's First Request for Production as well as Interrogatories 8 and 9 from Plaintiff's First Set of Interrogatories. In addition, Defendants objected to Plaintiff's Second Set of Interrogatories and Request for Production in its entirety. *See* Exs. M, N, O & P. Plaintiff also served a Notice for a Rule 30(b)(6) deposition scheduled for April 13, 2017. *See* Ex. Q. Defendants informed Plaintiff that they would not be

appearing for the Rule 30(b)(6) deposition. *See* Ex. R. Plaintiff has tried multiple times to resolve these discovery issues without judicial intervention and has not been successful in this regard.

## ARGUMENT

### I.   Defendants' objections to Plaintiff's request for production and interrogatories are meritless

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense .... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The standard for relevance is broad at the discovery stage. *U.S. ex rel Pogue v. Diabetes Treatment Ctrs. of Am.*, 235 F.R.D. 521, 525 (D.D.C. 2006).

#### a) Plaintiff's First Request for Production 7 & 8; Plaintiff's First Set of Interrogatories 8 & 9

As stated before, Deloitte Defendants always had a strong preference for Ms. Sawin, a female over Mr. Keerikkattil, a male. As a result of their preferential treatment towards Ms. Sawin, Deloitte Defendants spent hundreds of thousands of dollars on her legal representation in two cases - *Stacy Sawin v. Ranjith Keerikkattil*, 2015-CP0-005099 (D.C. Sup. Ct.) and *United States v. Ranjith Keerikkattil*, 2015-CMD-017652 (D.C. Sup. Ct.), that has nothing to do with Deloitte. These interrogatories and requests for production noted below were propounded to obtain discoverable information regarding Deloitte Defendants continued preferential treatment of Ms. Sawin relative to Mr. Keerikkattil.

### REQUEST NO. 7:

Detailed billing and payment records of payments made by Deloitte to Shulman, Rogers, Gandal, Pordy & Ecker P.A. ("SRGPE") relating to SRGPE's representation of Stacy Sawin in *Stacy*

*Sawin v. Ranjith Keerikkattil,* 2015-CP0-005099 (D.C. Sup. Ct.) and *United States v. Ranjith Keerikkattil,* 2015-CMD-017652 (D.C. Sup. Ct.).

**RESPONSE:**

Deloitte objects to Document Request No. 7 to the extent that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Deloitte further objects to Document Request No. 7 to the extent that it calls for the production of documents that are not relevant to the claims or defenses of any party. Deloitte further objects to this Request as it seeks documents protected by the attorney-client privilege, the attorney work-product doctrine, and the joint defense privilege.

**REQUEST NO. 8:**

Any and all communications sent or received between Deloitte (including via its external counsel Seyfarth Shaw LLP) and SRGPE relating to SRGPE's representation of Stacy Sawin in *Stacy Sawin v. Ranjith Keerikkattil,* 2015-CP0-005099 (D.C. Sup. Ct.) and *United States v. Ranjith Keerikkattil,* 2015-CMD-017652 (D.C. Sup. Ct.).

**RESPONSE:**

Deloitte objects to Document Request No. 8 to the extent that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Deloitte further objects to Document Request No. 8 to the extent that it calls for the production of documents that are not relevant to the claims or defenses of any party. Deloitte further objects to this Request as it seeks documents protected by the attorney-client privilege, the attorney work-product doctrine, and the joint defense privilege.

**INTERROGATORY NO. 8:**

Identify any indemnification or legal representation agreements between Deloitte and Stacy Sawin and describe in detail the terms and conditions of any such agreement.

**RESPONSE:**

Defendants object to Interrogatory No. 8 to the extent that it calls for the disclosure of information that is not relevant to the claims or defenses of any party. Defendants further object to Interrogatory No. 8 to the extent that it assumes the existence of facts and circumstances that did not or do not exist. Defendants further object to Interrogatory No. 8 as it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, and the joint defense privilege.

**INTERROGATORY NO. 9:**

Describe in detail the terms and conditions of Deloitte's payment of attorney's fees and costs for Stacy Sawin's representation by Shulman, Rogers, Gandal, Portly and Ecker P.A. in *Sawin v. Keerikkattil*, DC Superior Court case no. 2015 CPO 005099 and *United States v. Keerikkattil*, DC Superior Court case no. 2015 CMD 17652.

**RESPONSE:**

Defendants object to Interrogatory No. 8 to the extent that it calls for the disclosure of information that is not relevant to the claims or defenses of any party. Defendants further object to this Request as it seeks documents protected by the attorney-client privilege, the attorney work-product doctrine, and the joint defense privilege.

      b) **Plaintiff's Second Request for Production and Plaintiff's Second Set of Interrogatories**

      Defendants objected to Plaintiff's Second Request for Production and Plaintiff's Second Set of Interrogatories in its entirety by stating general boiler plate objections. *See* Exs. N & O. Defendants also objected claiming that Plaintiff's requests were untimely. However, the Court

may note that Defendants own production was late by 79 days. In addition, Deloitte Defendants could have easily produced these documents before the Final Pretrial Conference but chose not to do so.

### c) Incomplete production of responsive documents

DELOITTE005563-73 (attached as Ex. F) states that Deloitte had gathered text messages, e-mails, IM and app data from Ms. Sawin's phone. On June 18, 2015, Aleta Jacobson, Deloitte's eDiscovery Analyst stateD that there were two productions - one for SMSs and another for MMSs. Deloitte has only produced the SMSs and have not produced the MMSs. In addition, Deloitte did not produce any text messages exchanged via GroupMe (DELOITTE005563). Deloitte also did not produce the 579 emails in the "naughty" list (DELOITTE005563). *See* Ex. P for details. Hence, Deloitte Defendants should be compelled to produce the above documents that are discoverable under FRCP 26 but were never produced by them.

## II.     Defendants' objections to Rule 30(b)(6) depositions are frivolous

Plaintiff noted a Rule 30(b)(6) deposition for April 13, 2017. *See* Ex. Q. Defendants informed Plaintiff that they would not be appearing for the Rule 30(b)(6) deposition. *See* Ex. R. Defendants specifically objected to Plaintiff's notice stating that the notice did not comply with Local Rules 30(A) and 30(H). Plaintiff corrected Deloitte Defendants' counsel by stating that Local Rule 30(H) does not state that 11 days are mandatory. Rather, the rule only states 11 days "[a]s a general rule" and will vary with "the urgency of taking the deposition of a party or witness at a particular time and place". This urgency is required because discovery ends on April 14, 2017 and was caused due to Deloitte Defendants intentional delay tactics in providing documents responsive to Plaintiff's First Request until March 24, 2017, which is 79 days beyond its original due date of January 4, 2017. Plaintiff also agreed to have the deposition conducted

within EDVA Alexandria division per Local Rules 30(A). Despite the best efforts made by Plaintiff, Deloitte stated that they stand by their objections and will not appear at the deposition making this motion to compel inevitable.

### CONCLUSION

Based on the foregoing reasons, Plaintiff respectfully request that Defendants be compelled to 1) Provide comprehensive responses, unencumbered by objection, to Plaintiff's Interrogatories and Requests for Production of Documents as set forth herein; 2) Supplement their incomplete production of responsive documents; and 3) Appear and testify at the Rule 30(b)(6) deposition. Plaintiff further request his costs in bringing forth this motion and any other relief as the Court deems just and proper.

Dated: April 14, 2017                    Respectfully submitted,

Ranjith Keerikkattil
4707 Grand Bend Drive
Catonsville, MD 21228
rkeerikkattil@gmail.com
Tel: (443) 690-1031

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of April 2017, a true and accurate copy of the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL was served by First Class Mail Postage Prepaid to:

Christine M. Costantino
Eric J. Janson
Nicholas H. De Baun

11

Seyfarth Shaw LLP
975 F Street, N.W.,
Washington, DC 20004
Phone: (202) 463-2400
Fax: (202) 641-9232
ccostantino@seyfarth.com
ejanson@seyfarth.com
ndebaun@seyfarth.com
*Counsel for Defendants Deloitte LLP, Deloitte Consulting LLP, Deloitte Services LP*

_____
Ranjith Keerikkattil