FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA MAY -9  P 4: 27
**Alexandria Division**

ERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

RANJITH KEERIKKATTIL,  )
  )
Plaintiff,  )
  )
v.  ) Case No: 1:16-cv-827-CMH-MSN
  )
STACY SAWIN, et al.  )
  )
Defendants.  )
_____ )

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

Plaintiff, Ranjith Keerikkattil, hereby submits his Opposition to Defendants' Motion for Summary Judgment (ECF No. 75) filed by Defendants Deloitte LLP, Deloitte Consulting LLP and Deloitte Services LP (collectively referred as "Defendants").

### INTRODUCTION

Here we have Defendants represented by former Defendant Eric Janson once again lying that "Plaintiff Ranjith Keerikkattil is a vexatious litigant who was banned from the University of Maryland after he stalked one of its students." *Defendants' Memorandum* (ECF No. 76) at 1. Absent litigation privilege, Defendant's statements would be defamation *per se*. Defendants themselves admit that Plaintiff graduated with "his bachelor's degree in applied mathematics from the University of Maryland in 2010". *See* ECF No. 76 at 4. As for their lie that Plaintiff is "banned" from University of Maryland, Plaintiff has and continues to attend alumni events at the University as late as a few weeks ago. Similarly, their claim that Plaintiff stalked someone is frivolous as well and cannot point to any rulings or findings of fact to substantiate this.

Defendants attempt to label Plaintiff as a vexatious litigant by stating:

> Plaintiff has sued virtually every person and institution associated with this litigation, including Deloitte and five of its professionals including Stacy Sawin, the Deloitte employee he currently stands accused of criminally stalking; the Washington, D.C. Metropolitan Police and two of its employees who arrested him; the U.S. Attorney for Washington, D.C. and the Assistant U.S. Attorney initially assigned to prosecute him; the attorneys representing Ms. Sawin; Ms. Sawin's father; and one of the undersigned attorneys for Deloitte.

*Id.*

However, they have provided no rulings or findings of fact from any of the cases to prove their frivolous claim that Plaintiff's assertions were frivolous or vexatious. *See Keerikkattil v. Shealy, et al.*, No. 24C16002306 (Md. Cir. Ct.) and *Keerikkattil v. Stargel, et al.*, No. 16-CV-00857 (D.D.C.). However, the Court may take judicial notice of the fact that Eric Janson was hired by Deloitte based on Stacy Sawin's insistence, was also her former counsel[1], extensively lobbied Deloitte to hire his mistress Meredith Campbell[2] as Ms. Sawin's counsel and went as far as contacting an Assistant U.S. Attorney and demanded that he should bring criminal charges against Plaintiff to silence him in this litigation[3]. Mr. Janson should be ashamed of himself for stooping to such lows. Plaintiff's work has only started in holding these crooks and criminals accountable under the law.

## PRELIMINARY STATEMENT

Defendants' Motion for Summary is a web of delusion and outright lies that paints a false picture of the actual facts that lead to Plaintiff's unlawful termination from Deloitte. As Plaintiff would be explaining in detail in this motion, there are multiple "genuine issues of material facts" in the Statement of Material Facts proffered by the Defendants and hence summary judgment must be denied.

---

[1] Am. Compl., Ex. R.
[2] Am. Compl., Ex. S.
[3] ECF No. 67-2.

Stacy Sawin, one of Plaintiff's former colleagues at Deloitte Consulting LLP *lied* to her employer about her interactions with Plaintiff in order to *"protect"* herself and so that *"Deloitte fires him[Plainitff]"*. Deloitte assigned a Talent (HR) Senior Manager Alicia Carberry, who is better known at the firm for sleeping around with Deloitte partners (such as Kelly Mire[4]) than for her investigative skills and had a discriminatory animus towards Plaintiff from the beginning. After interviewing both Plaintiff's superiors Ritesh Verma and Bheeshma Tumati well as his colleagues Laura Amster and Julie Gi Kim, and being unable to find any evidence to substantiate Ms. Sawin's frivolous claims, Ms. Carberry *lied* to Derick Masengale (the individual who had the power to hire and fire Plaintiff) that Plaintiff lied to her and demanded that he be terminated. At the same time, Ms. Carberry *lied* to Deloitte leadership that she did not find any explicit/vulgar text messages and sexting apps such as Snapchat on Ms. Sawin's Deloitte phone, a conduct that violates Deloitte's policies and would have subjected Ms. Sawin to termination.

## FACTUAL BACKGROUND

Plaintiff, Ranjith Keerikkattil ("Mr. Keerikkattil") started his employment with Deloitte Consulting LLP ("Deloitte Consulting") on November 10, 2014 as a Senior Consultant within its Federal Information Management Service Line headed by Defendant Derick Masengale. He had no supervisory role and no other Deloitte employee reported to him. (Keerikkattil Decl. (Ex. A) ¶ 1.)

Mr. Keerikkattil met Stacy Sawin ("Ms. Sawin") for the first time on March 4, 2015 at Information Management Sip'n'Share, a networking event held at Deloitte. She contacted him the next day via e-mail. (Keerikkattil Decl. ¶2. and Ex. 1)

On April 14, 2015, Ms. Sawin after getting fired from her project with Bureau of Engraving & Printing ("BEP") and security clearance denied contacted him via e-mail asking for

---

[4] Am. Compl., ¶ 68.

help finding a project. Ritesh Verma ("Mr. Verma"), a Director with Deloitte Consulting was looking for a Business Technology Analyst ("BTA") to assist him for a proposal effort. Mr. Keerikkattil provided a list of available BTAs to Mr. Verma. He eventually made the decision to hire Ms. Sawin on the FPS proposal effort (Keerikkattil Decl. ¶ 3. and Ex. 2). Mr. Keerikkattil was never Ms. Sawin's manager or supervisor. Both of them reported to Bheeshma Tumati ("Mr. Tumati"), a Senior Manager with Deloitte Consulting who worked under Mr. Verma.

On May 30, 2015, Mr. Keerikkattil sent Ms. Sawin a polite letter via e-mail titled "FPS Future Guidance and Cease & Desist Letter" expressing his desire to have no direct involvement with her on the FPS proposal effort. (Keerikkattil Decl. ¶ 10. and Ex. 7)

On June 1, 2015 at 3:50 PM, Ms. Sawin sent a text message to Vikram Rajan stating "I'm taking actions to protect myself because he sent me a cease and desist letter and eluded to me asking him to lie to my manager". *See* Ex. B at DELOITTE008670. Most outrageously at 8:48 PM, Ms. Sawin sends a text message to Sam Magier that states, "Thanks Sam! This guy is quite a piece of work. I hope Deloitte fires him". *Id.* This removes any questions on what Ms. Sawin's intent were – to fabricate lies about Plaintiff to get him fired from Deloitte.

Ms. Sawin also contacts her Deloitte Counselor Kash Tajammul and lies to him that Mr. Keerikkattil brought her on to the CMS proposal because he was interested her. She also lied that Mr. Keerikkattil told her that she is no longer needed on the proposal because she did not accept his gifts. *See* Ex. C at DELOITTE006680. Mr. Keerikkattil never ever told Ms. Sawin that she is no longer needed on the CMS proposal. It is obvious that she was trying to manufacture a sexual harassment and retaliation scenario. Mr. Tajammul reports and restates Ms. Sawin's lies to Monique Mignon, a Deloitte Talent/HR employee. *Id.*

On June 3, 2015, Ms. Sawin sends Leslie Moore Garcia, a Deloitte HR employee an e-

4

mail containing the following hyperlink: https://casetxt.com/case/keerikkattil-v-hrabowski. This was intentionally done to portray Mr. Keerikkattil in a negative light at the beginning of the investigation with the intent to have him fired, something that she had desired. *See* Ex. D at DELOITTE005387. Ms. Sawin also writes up a document titled "The interactions Between Stacy Sawin and Ranjith Keerikkattil" with multiple false and defamatory statements and calls it the most important document and submits it to Deloitte HR. *See* Ex. E at DELOITTE008867.

Stacy Sawin also cleverly deleted and altered selected text messages and apps from her Deloitte corporate phone. This became known During Deloitte's investigation when a text message that stated, "Stacy I want to eat you" sent from Vikram Rajan to Stacy Sawin was missing from the text messages obtained from her phone. However, Vikram Rajan vividly recalled sending her that text message. *See* Ex. F at DELOITTE008846. In fact, even Deloitte's own eDiscovery Litigation Analyst, Aleta Jacobson clearly points to deletion of text messages by Stacy Sawin. *See* Ex. G at DELOITTE005563.

Based on Ms. Sawin's lies, Deloitte HR interviewed Mr. Keerikkattil's superiors and subordinates for any improper behaviors or communications from Mr. Keerikkattil towards Ms. Sawin. After interviewing his superiors Ritesh Verma and Bheeshma Tumati, as well as his colleagues Laura Amster and Julie Gi Kim, Deloitte was unable to find any improper behavior from Mr. Keerikkattil towards Ms. Sawin. *See* Ex. H at DELOITTE008776-78, 6777-81, 6771-74 and 6775-76. After failing to find any improper conduct, Alicia Carberry who from the beginning wanted to fire Mr. Keerikkattil lied to Derek Masengale that Mr. Keerikkattil should be fired for lying to her. She even prepared the script for Derek Masengale. *See* Ex. I at DELOITTE008747-48.

Alicia Carberry also ensured that Mr. Keerikkattil's complaint against Ms. Sawin gets

resolved in her favor. Despite the fact that Deloitte's own eDiscovery Litigation Analyst stated that Stacy Sawin may have deleted text messages and apps, Ms. Carberry and her subordinate Leslie Moore Garcia made no efforts to retain her corporate phone or laptop hard drive, or to recover these deleted messages and apps. Instead they lied to Deloitte leadership stating that they did not recover any explicit text messages, lync messages or e-mails. *See* Ex. J at DELOITTE005721. This is in stark contrast to her conduct towards Mr. Keerikkattil where she immediately confiscated his corporate phone and laptop and specifically instructed to Deloitte IT that these devices should be preserved. *See* Ex. K at DELOITTE005366. Despite the fact that Deloitte's eDiscovery Litigation Analyst found Snapchat installed in her corporate phone, which is a direct violation of APR 208.007, Ms. Carberry and her subordinate Leslie Moore Garcia reported to Deloitte leadership that Ms. Sawin did not violate any Deloitte policies. APR 208.007 states that installing, using or downloading any unauthorized software, applications or technology services is prohibited. *See* Ex. F at DELOITTE008850. Mr. Keerikkattil's claim that Ms. Sawin was fired from her Bureau of Engagement & Printing ("BEP") project due to failure to obtain security clearance was also found to be true. *Id; see also* Ex. L at DELOITTE005340.

Deloitte and Ms. Carberry always had a strong preference for Ms. Sawin, a female over Mr. Keerikkattil, a male. Upon Ms. Sawin's insistence[5], Deloitte Defendants' hired Eric J. Janson and his law firm Seyfarth Shaw LLP to defend against Plaintiff's anticipated Federal lawsuit. Ms. Sawin, Deloitte Defendants and Mr. Janson concocts a plan to accuse Plaintiff of stalking Ms. Sawin and then use the stalking claim to threaten and intimidate Plaintiff. Together, they submit a document with multiple false statements about Plaintiff to DC MPD First District Police Station with the intend of bringing frivolous criminal stalking charges against him.

[5] Both Ms. Sawin and Mr. Janson graduated from Lehigh University and knew each other through their alma mater. *See* Am. Compl., Exs. G & S.

Ms. Sawin and Mr. Janson then file a frivolous and defamatory Civil Restraining Order ("CRO") petition in D.C. Superior Court that gets summarily dismissed. After failing the CRO petition, Ms. Sawin and Mr. Janson attempt a second bite at the apple by filing a Civil Protection Order ("CPO") petition in D.C. Superior Court. Mr. Janson insisted that Deloitte Defendants specifically hire Meredith S. Campbell ("Ms. Campbell"), his intimate friend from Lehigh days[6], and her law firm Shulman, Rogers, Gandal, Pordy and Ecker P.A. ("SRGPE"). Mr. Janson also obtained funding for Ms. Campbell and SRGPE from Deloitte for representing Ms. Sawin in the CPO proceeding. Michael J. Lichtenstein, General Counsel for SRGPE has already admitted that Deloitte under Mr. Janson's direction has been paying SRGPE's (and his paramour's) legal bills for representing Stacy Sawin. *See* ECF No. 67-1.

Mr. Janson also used his influence with the United States Attorney's Office for the District of Columbia to initiate and sustain a meritless misdemeanor prosecution against Plaintiff. Any doubts regarding this were cleared when on September 8, 2016 Mr. Janson, as Deloitte's agent personally appeared in D.C. Superior Court and demanded to John Giovannelli, an AUSA that he should bring felony criminal charges to threaten and intimidate Plaintiff from pursuing this case. Plaintiff's claims are corroborated by Allison Baker Shealy, an SRGPE attorney and Deloitte funded counsel for Ms. Sawin who witnessed Mr. Janson's tortious interactions with Mr. Giovannelli. *See* ECF No. 67-2.

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE

1. Plaintiff and Ms. Sawin knew each other and were friends on Facebook before working together on the CMS FPS proposal. On April 14, 2015, Ms. Sawin after getting fired from her project with Bureau of Engraving & Printing ("BEP") and security clearance denied

---

[6] Mr. Janson and Ms. Campbell both graduated from Lehigh University in 1998. *See* Am. Compl., Ex. S. After Lehigh, Ms. Campbell went to Harvard Law and Mr. Janson ended up at bottom-tier George Mason Law.

contacted Plaintiff via e-mail asking for help finding a project. Ritesh Verma ("Mr. Verma"), a Director with Deloitte Consulting was looking for a Business Technology Analyst ("BTA") to assist him for a proposal effort. Mr. Keerikkattil provided a list of available BTAs to Mr. Verma. He eventually made the decision to hire Ms. Sawin on the FPS proposal effort. Mr. Keerikkattil was never Ms. Sawin's manager or supervisor. Both of them reported to Bheeshma Tumati ("Mr. Tumati"), a Senior Manager with Deloitte Consulting who worked under Mr. Verma. All of the work Ms. Sawin performed was assigned by Mr. Tumati and Mr. Verma. (Keerikkattil Decl. ¶ 3. and Ex. 2). **(Dispute D's SOF ¶ 4, 5.)**

2. Defendants' claim that Plaintiff was "evasive and uncooperative" (Carberry Decl. ¶ 16.) is completely false. Alicia Carberry's meeting notes show that Plaintiff had answered all her questions, gave her "3 zip files" that had all the "emails related to Stacy". *See* Ex. D to Carberry Decl. **(Dispute D's SOF ¶ 16.)**

3. Defendants specifically stated that "Plaintiff denied having sent Ms. Sawin a text saying she was "slim and sexy," denied that he had communicated with Ms. Sawin after sending her the "cease and desist" email, and denied that Ms. Sawin had ever asked him to keep his communications with her strictly professional". (Carberry Decl. ¶ 16). However, Alicia Carberry's interview notes (Ex. D to Carberry Decl.) contradict this. According to her notes, with respect to the so called "slim and sexy" text message, Plaintiff had stated "I think I know what this is about. There was one time when we were in McLean and I think I upset her because she misunderstood me and thought I made a fat comment. I sent her a text later that said sorry if I hurt her feelings that I didn't mean to." With respect to Defendants' claim that Plaintiff denied that he had communicated with Ms. Sawin after

sending her the "cease and desist" email, Ms. Carberry's notes state, "well maybe once to make sure that she didn't have any questions related to the email her sent." Besides Ms. Carberry's notes does not contain the question – "Has Ms. Sawin had ever asked Mr. Keerikkattil to keep his communications with her strictly professional?". Plaintiff's answers to Ms. Carberry is consistent with his testimony under oath as well as supporting evidence (Keerikkattil Decl. ¶ 5, 10. and Ex. 3). Taken together Alicia Carberry's statement that Plaintiff lied to her is in itself a big lie. **(Dispute D's SOF ¶ 16, 17, 18.)**

4. Despite the fact that Plaintiff was truthful to Ms. Carberry, she lied to Deloitte leadership and Derick Masengale (the individual who had the power to terminate Plaintiff) that Plaintiff lied to her and should be terminated. She even prepared the termination script for Mr. Masengale detailing what he should tell Plainitff while terminating him. *See* Ex. I at DELOITTE008747-48. In addition, Alicia Carberry and her deputy Leslie Moore Garcia interviewed Plaintiff's superiors Ritesh Verma and Bheeshma Tumati, as well as his colleagues Laura Amster and Julie Gi Kim, all of who testified that they did not witness any improper behavior from Mr. Keerikkattil towards Ms. Sawin. *See* Ex. H at DELOITTE008776-78, 6777-81, 6771-74 and 6775-76. Hence the only way for Ms. Carberry to maliciously fire Plaintiff was to lie that he lied to her. **(Dispute D's SOF ¶ 20, 21.)**

5. Stacy Sawin filed the complaint with Deloitte not because she was concerned about any non-work related text messages or interactions. In fact, more than 90% of all text messages sent/received by Ms. Sawin on her Deloitte corporate phone had nothing to do with her work at Deloitte. *See* Ex. B. In addition, these text messages show that Ms. Sawin frequently attended non-work related events with her Deloitte employees. The only

reason why Ms. Sawin filed a complaint with false statements against Plaintiff was according to her own words, to *"protect"* herself after Plaintiff sent her the cease and desist letter on May 30, 2015 as she stated in a text message to Vikram Rajan and so that *"Deloitte fires him[Plainitff]"* as she stated in a text message to Sam Magier. *See* Ex. B at DELOITTE008670. **(Dispute D's SOF ¶ 5, 6, 10, 11.)**

6. Stacy Sawin lied to her Deloitte Counselor Kash Tajammul that Mr. Keerikkattil brought her on to the CMS proposal because he was interested her. She also lied that Mr. Keerikkattil told her that she is no longer needed on the proposal because she did not accept his gifts. *See* Ex. C at DELOITTE006680. Mr. Keerikkattil never ever told Ms. Sawin that she is no longer needed on the CMS proposal (Keerikkattil Decl. ¶ 10. and Ex. 7). In addition, Ms. Sawin was hired on the CMS proposal because she contacted Plaintiff asking for help and Plaintiff forwarded her name to Ritesh Verma who chose to hire her (Keerikkattil Decl. ¶ 3. and Ex. 2). Mr. Tajammul reported and restated Ms. Sawin's lies to Monique Mignon, a Deloitte Talent/HR employee. *See* Ex. C at DELOITTE006680. Also, in order to portray Plaintiff in a negative light to have him fired, Ms. Sawin lied to Deloitte investigators that Plaintiff had stalked a student at University of Maryland *See* Ex. D at DELOITTE005387. However, Ms. Sawin has never complained to Deloitte that Plaintiff had stalked her. **(Dispute D's SOF ¶ 11, 12, 13, 14, 15.)**

7. Alicia Carberry's investigation of Plaintiff's complaint against Ms. Sawin is laughable at best. Plaintiff had complained, among others, that (i) "Stacy Sawin uses her Deloitte issued corporate mobile phone/Lync to exchange text messages/IM's that not only are unrelated to legitimate business needs but also are sexually explicit or inappropriate"; and (ii) "Stacy Sawin uses her Deloitte issued corporate mobile phone for purposes not only

are irrelevant to Deloitte's legitimate business needs but also are inappropriate such as dating and/or pornography". Ms. Carberry had already made up her mind to exonerate Ms. Sawin from the beginning and the sham investigation was just to cover her butt in the case of any litigation. In support of this:

a) Ms. Carberry gave Ms. Sawin advance notice so that she could delete all the explicit messages and apps such as OkCupid from her phone as well as compromising IM's and e-mails from her laptop. On the other hand, she forcibly confiscated Plaintiff's laptop and phone from him. In other words, Ms. Carberry enabled Ms. Sawin to destroy inculpatory evidence while denying Plaintiff the ability to present inculpatory evidence.

b) Deloitte's eDiscovery Litigation Analyst Aleta Jacobson found Snapchat, a wildly popular sexting app installed in Ms. Sawin's Deloitte corporate phone, which is a direct violation of APR 208.007, which prohibits the "Installing, using or downloading any unauthorized software, applications or technology services." *See* Ex. F at DELOITTE008850. Despite conclusive evidence, Ms. Carberry and her subordinate Leslie Moore Garcia reported to Deloitte leadership that Ms. Sawin did not violate any Deloitte policies.

c) Defendants never performed any forensic analysis to determine which all apps were deleted from Ms. Sawin's Deloitte phone. This would have uncovered the truth that Ms. Sawin used dating apps such as OkCupid on the phone in violation of APR 208.007. Mr. Keerikkattil has testified at his deposition as well as sworn under oath that he had witnessed dating apps on Ms. Sawin's Deloitte corporate phone. Ms. Carberry instead reported that she did not find any dating apps on Ms. Sawin's phone.

d) Defendants withheld sexually explicit MMSs identified by Ms. Jacobson from

production to Plaintiff. Ms. Jacobson had stated in that she had recovered both SMSs and MMSs. As an example, Ms. Sawin sent the following text message to Vikram Rajan on 6/17/2015 at 6:32:46AM, "Woke up a bit b4 I actually was actually getting out of bed and realized that I had nothing on below the waist ... http://m.imgur.com/gallery/JZ85Pgu" (Ex. B at DELOITTE008660). The sexually explicit MMS along with other would have clearly proven that Ms. Sawin violated Deloitte's Code of Conduct. Defendants also withheld 579 explicit emails in the "naughty" list (Ex. G at DELOITTE005563) identified by Ms. Jacobson from production. Despite uncovering sexually explicit MMSs and e-mails, Ms. Carberry and Ms. Garcia (Ms. Carberry's Deputy) notified Deloitte leadership that they uncovered no explicit messages or e-mails.

**(Dispute D's SOF ¶ 22, 25, 26.)**

8. Plaintiff testified during his deposition about explicit text messages as well as Snapchat and OkCupid apps on Ms. Sawin's Deloitte corporate mobile phone (Pl. Dep.at 132-140.) Plaintiff has also certified under oath in his declaration that he had witnessed explicit text messages as well as Snapchat and OkCupid apps on Ms. Sawin's Deloitte corporate mobile phone (Keerikkattil Decl. ¶ 11.) **(Dispute D's SOF ¶ 23, 24, 25, 26.)**

## LEGAL STANDARD

### I.  Summary Judgment

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.,* 80 F.3d 954, 958-59 (4th Cir.1996). The party seeking summary judgment has the initial burden to show the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317,325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *see also Lettieri v. Equant Inc.,* 478 F.3d 640, 642 (4th Cir.2007). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248. Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## II.   Title VII Discrimination

Title VII prohibits an employer from (i) discriminating against an employee on the basis of sex, and (ii) retaliating against an employee for complaining about prior discrimination or retaliation. 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). In order to survive summary judgment, plaintiff must first establish a *prima facie* case of unlawful discrimination. *See Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 142 (2000); *Texas Dept of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981). In order to establish a *prima facie* case of discriminatory adverse employment action under Title VII, a plaintiff must either produce "direct evidence" of discrimination or satisfy the burden shifting rubric established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Direct evidence of discrimination is "a set of facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely

than not that the adverse employment action was the product of discrimination." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 58 (4th Cir. 1995). To establish a *prima facie* case under *McDonnell Douglas,* a plaintiff must prove that he: (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectation at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside of the protected class. *See McDonnell Douglas,* 411 U.S. at 802. If the plaintiff chooses to proceed under this burden shifting framework and establishes a prima facie case, the burden of production then shifts to the employer to articulate a legitimate, non- discriminatory justification for its allegedly discriminatory action. *Burdine, supra,* 450 U.S. at 253. If the employer carries this burden, the plaintiff then must establish that the neutral reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *See Burdine,* 450 U.S. at 256 ("[Plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."). "The final pretext inquiry merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination, which at all times remains with the plaintiff." *Merritt v. Old Dominion Freight Line, Inc.,* 601 F.3d 289, 294 (4th Cir. 2010) (internal citations omitted). *See also Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133 (2000) (a Title VII plaintiff must prove an employer's reasons were not true or "unworthy of credence."); *EEOC v. Navy Federal Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005).

## ARGUMENT

**I.  Plaintiff has provided sufficient evidence from which a jury could reasonably**

**conclude that he was discriminated**

Under *McDonnell Douglas*, a plaintiff demonstrates a prima facie case of sex discrimination by showing that (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectation at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside of the protected class. *See McDonnell Douglas*, 411 U.S. at 802.

Sex is a protected class under the Civil Rights Act of 1964. Mr. Keerikkattil has suffered adverse employment action in the form of termination by Deloitte. Mr. Keerikkattil was performing his job duties that exceeded his employer's expectations based upon his DPME performance rating as well as the communication from his Counselor Mehran Tamami[7]. Mr. Keerikkattil's position remained opened and a job listing with Mr. Keerikkattil's same Title (Senior Consultant, Deloitte Consulting LLP) and Job Description (SAS Developer, Arlington VA) appeared on Deloitte's Careers web site within 2 business days from his unlawful termination[8]. Therefore, Mr. Keerikkattil has met all the requirements to demonstrate a prima facie case of sex discrimination under *McDonnell Douglas*.

Plaintiff has already proven that Deloitte's proffered reasons for his termination were false. It is abundantly clear that Alicia Carberry lied to Deloitte leadership to get Plaintiff fired. Pl SOF in Dispute ¶¶ 3-4. A "failure to conduct what appeared to be a fair investigation of" the violation that purportedly prompted adverse action may support an inference of pretext. *See Trujillo v. PacifiCorp*, 524 F.3d 1149, 1160 (10th Cir. 2008). At the same time, Alicia Carberry turned a blind eye to Stacy Sawin's violations of Deloitte policies and instead lied to Deloitte leadership

[7] Am. Compl., Ex. B.
[8] Am. Compl., Ex. V.

that Ms. Sawin did not violate any Deloitte policies to save her job. Pl SOF in Dispute ¶ 7. There is absolutely no question that Alicia Carberry and her deputy Leslie Moore Garcia both *females* discriminated against Plaintiff, a *male* compared to Stacy Sawin, a *female*.

Since Mr. Keerikkattil has successfully made a prima facie case of sex discrimination and has proven with sufficient evidence that Deloitte's asserted justifications were false, a reasonable trier of fact could conclude that he was unlawfully discriminated by Deloitte. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). Therefore, Mr. Keerikkattil has proven a valid claim for sex discrimination under *McDonnell Douglas* burden-shifting framework.

## II. Plaintiff and Ms. Sawin are similarly situated under Title VII

Deloitte Defendants claim that Plainitff and Ms. Sawin are not similarly situated because according to them Plaintiff "was a Senior Consultant in Deloitte's Information Management Service Line" and "Ms. Sawin was a Business Technology analyst, a more junior role." *Defendants' Memorandum* (ECF No. 76) at 13. However, Defendants' do not offer any evidence to show that Plaintiff was Ms. Sawin's supervisor or that his duties were substantially different from that of Ms. Sawin's.

Deloitte Consulting LLP has three tiers of employees:

(i)     Partners & Directors – Partners own shares of the firm and Directors are non-equity partners. Partners and Directors are elected by existing Partners and Directors.

(ii)    Managers – Managers report to Partners and Directors and supervise regular employees.

(iii)    Non-managerial employees – These employees have no supervisory responsibilities and include the titles of Senior Consultants, Consultants and Business Technology Analysts.

Plaintiff like Ms. Sawin as a regular non-managerial employee of Deloitte Consulting LLP had no supervisory responsibilities as Deloitte Consulting Director Ritesh Verma clearly stated, "Ranjith not responsible for anyone else". *See* Ex. H at DELOITTE008777

"'[T]o be similarly situated the employees must have been disciplined by the same supervisor.'" *Jones v. Giant of Md., LLC*, No. DKC–08–304, 2010 WL 3677017, at *8 (D. Md. Sept. 17, 2010) (quoting *McDougal–Wilson v. Goodyear Tire and Rubber Co.*, 427 F. Supp. 2d 595, 610 (E.D.N.C. 2006)). Within Deloitte Consulting, employees (or practitioners in Deloitte lingo) are hired and fired by Service Line leaders. Plaintiff and Ms. Sawin were both hired by Defendant Derek Masengale as the Service Line Leader for Deloitte's Information Management Service Line. Similarly, the decision to terminate Plaintiff's employment was made by Mr. Masengale. *See Am. Compl.*, Ex. K. Hence, Plaintiff and Ms. Sawin are similarly situated under Title VII.

## CONCLUSION

For the foregoing reasons, Plaintiff Ranjith Keerikkattil respectfully requests that this Court deny Defendant's Motion for Summary Judgment.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 83.1M(2)

I declare under penalty of perjury that:

No other attorney has prepared, or assisted in the preparation of this document.

_____

Ranjith Keerikkattil

Executed on: May 9, 2017


Dated: May 9, 2017                          Respectfully submitted,


                                            Ranjith Keerikkattil
                                            4707 Grand Bend Drive
                                            Catonsville, MD 21228
                                            rkeerikkattil@gmail.com
                                            Tel: (443) 690-1031

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of May 2017, Plaintiff's Opposition to Defendants' Motion for Summary Judgment was served by First Class Mail Postage Prepaid to:

Christine M. Costantino
Eric J. Janson
Nicholas H. De Baun
Seyfarth Shaw LLP
975 F Street, N.W.,
Washington, DC 20004
Phone: (202) 463-2400
Fax: (202) 641-9232
ccostantino@seyfarth.com
ejanson@seyfarth.com
ndebaun@seyfarth.com
*Counsel for Defendants Deloitte LLP, Deloitte Consulting LLP, Deloitte Services, LP*

Ranjith Keerikkattil