# Exhibit F

**Ranjith Keerikkattil's Allegations as noted in the email entitled**

**"Talent Meeting Follow-Up" on June 12, 2015**

Talent Meeting

1. Stacy Sawin has maintained and continues to maintain non-professional relationships with Deloitte employees, including but not limited to, with Vikram Rajan who had invited her for dates in the past.
    a. What Information do we currently know? When did we receive it, from whom and in what form did we receive it.
        i. So both Stacy and Vikram have verbally told Leslie Garcia that they are seeing each other socially outside of work.
        ii. Conversation with Stacy took place via the phone on 6.2.2015 and the conversation with Vikram took place via the phone on 6.23.2015.
        iii. Leslie Garcia confirmed that Stacy and Vikram do not work on the same engagement and/or firm initiatives (e.g. proposal/FPI/RFP) nor do they directly report to each other in any capacity. Both Stacy and Vikram are both Business Technology Analysts (BTA) within Federal Deloitte Consulting LLP. Stacy is aligned to the Federal Technology Information Management service line and Vikram is aligned to the Federal Technology System Integration service line.
        iv. Stacy admitted to Leslie on 6.22.2015 that she has other friendships with Deloitte colleagues that include but are not limited to, Thor Schumacher, Federal Technology System Integration BTA
    b. What questions do we still need to ask and to whom we need to ask them?
        i. N/A
    c. What Deloitte policies apply? APR 216 Nepotism
        i. "The U.S. Firms prohibit situations where a *Related Person* either directly or indirectly: Manages, supervises, reviews or evaluates work performed by another *Related Person*, or Is responsible for, has influence on, or has control of related confidential information pertaining to the recruitment, hiring, admission, retention, evaluation, assignment, management, supervision, compensation, payment, training, transfer, promotion, demotion, discipline, termination or any other action that may result in the reward or disadvantage of another *Related Person*.
        ii. For other situations involving *Related Persons* not expressly prohibited under this policy, the applicable U.S. Firm(s) may review, evaluate and determine the appropriateness of all such situations and take any steps, in their discretion, to address any situations that (a) have the potential for creating an adverse impact on the relevant operations or the workplace, (b) create problems of safety, security or morale, or (c) create either an actual conflict of interest or the appearance of a conflict of interest."

2. Stacy Sawin frequently invites Deloitte employees to her apartment.
    a. What Information do we currently know? When did we receive it, from whom and in what form did we receive it.

        i. Based on the image and preservation of Stacy's Deloitte issued PDA, we have been able to confirm via text messages that fellow Deloitte colleagues have in fact been to Stacy's home.
        ii. Stacy has confirmed with Leslie via a phone conversation on 6.22.2015 that Thor Schumacher had been to her home to do laundry.
    b. What questions do we still need to ask and to whom we need to ask them?
        i. N/A
    c. What Deloitte policies apply? N/A

3. Stacy Sawin uses her Deloitte issued corporate mobile phone/Lync to exchange text messages/IM's that not only are unrelated to legitimate business needs but also are sexually explicit or inappropriate.
    a. What Information do we currently know? When did we receive it, from whom and in what form did we receive it.
        i. Based on the information received from the image and preservation of Stacy's Deloitte issued PDA on 6.18.2015 from Aleta Jacobson, we have been unable to confirm that any explicit text messages or pictures where sent or received to Stacy.
    b. What questions do we still need to ask and to whom we need to ask them?
        i. We need to ask Aleta Jacobson if she is able to recover text messages to and from Vikram Rajan on Stacy's PDA prior to May 14, 2015.
        ii. Question to OGC: Do we need to check her Deloitte email and Lync to determine if she has sent or received any explicit email messages or Lync messages?
        iii. Can Aleta check apps (e.g. Snapchat, OkCupid) on Stacy's Deloitte issued PDA for explicit material?
    c. What Deloitte policies apply?
        i. APR 208 Electronic Communications:
            1. .001 "The *Systems* and *Electronic Communications* are considered to be the property of the *U.S. Firms*, unless otherwise provided by law. While incidental and occasional personal use of the *Systems* is permitted in accordance with this policy, a *User* waives any claims to privacy as it relates to the use of the *Systems* and to the *Electronic Communications*. If a personal *Electronic Communication* is intended to be truly "confidential" or "privileged", alternative means of transmission should be used."
            2. .007 Other Prohibited Activities: "Installing, using or downloading any unauthorized software, applications or technology services."

4. Stacy Sawin uses her Deloitte issued corporate mobile phone for purposes not only are irrelevant to Deloitte's legitimate business needs but also are inappropriate such as dating and/or pornography.
    a. What Information do we currently know? When did we receive it, from whom and in what form did we receive it.
        i. Based on the information received from the image and preservation of Stacy's Deloitte issued PDA on 6.18.2015 from Aleta Jacobson, we have been unable to confirm that any explicit text messages or pictures where sent or received to Stacy.
    b. What questions do we still need to ask and to whom we need to ask them?

i. We need to ask Aleta Jacobson if she is able to recover text messages to and from Vikram Rajan on Stacy's PDA prior to May 14, 205.
ii. Question to OGC: Do we need to check her Deloitte email and Lync to determine if she has sent or received any explicit email messages or Lync messages?
iii. Can Aleta check apps (e.g. Snapchat, OkCupid) on Stacy's Deloitte issued PDA for explicit material?

c. What Deloitte policies apply?
   i. APR 208 Electronic Communications:
      1. .001 "The *Systems* and *Electronic Communications* are considered to be the property of the *U.S. Firms*, unless otherwise provided by law. While incidental and occasional personal use of the *Systems* is permitted in accordance with this policy, a *User* waives any claims to privacy as it relates to the use of the *Systems* and to the *Electronic Communications*. If a personal *Electronic Communication* is intended to be truly "confidential" or "privileged", alternative means of transmission should be used."
      2. .007 Other Prohibited Activities: "Installing, using or downloading any unauthorized software, applications or technology services."

---

A. What is Stacy's relationship with other Deloitte co-workers and specifically Vikram Rajan? Does she maintain relationships with other Deloitte employees beyond "professional relationships"?
   a. What Information do we currently know? When did we receive it, from whom and in what form did we receive it.
      i. So both Stacy and Vikram have verbally told Leslie Garcia that they are seeing each other socially outside of work.
      ii. Conversation with Stacy took place via the phone on 6.2.2015 and the conversation with Vikram took place via the phone on 6.23.2015.
      iii. Leslie Garcia confirmed that Stacy and Vikram do not work on the same engagement and/or firm initiatives (e.g. proposal/FPI/RFP) nor do they directly report to each other in any capacity. Both Stacy and Vikram are both Business Technology Analysts (BTA) within Federal Deloitte Consulting LLP. Stacy is aligned to the Federal Technology Information Management service line and Vikram is aligned to the Federal Technology System Integration service line.
      iv. Stacy admitted to Leslie on 6.22.2015 that she has other friendships with Deloitte colleagues that include but are not limited to, Thor Schumacher, Federal Technology System Integration BTA
   b. What questions do we still need to ask and to whom we need to ask them?
      i. N/A
   c. What Deloitte policies apply? APR 216 Nepotism
      i. "The U.S. Firms prohibit situations where a *Related Person* either directly or indirectly: Manages, supervises, reviews or evaluates work performed by another *Related Person*, or Is responsible for, has influence on, or has control of related confidential information pertaining to the recruitment, hiring, admission, retention, evaluation, assignment, management, supervision, compensation, payment,

training, transfer, promotion, demotion, discipline, termination or any other action that may result in the reward or disadvantage of another *Related Person*.

ii. For other situations involving *Related Persons* not expressly prohibited under this policy, the applicable U.S. Firm(s) may review, evaluate and determine the appropriateness of all such situations and take any steps, in their discretion, to address any situations that (a) have the potential for creating an adverse impact on the relevant operations or the workplace, (b) create problems of safety, security or morale, or (c) create either an actual conflict of interest or the appearance of a conflict of interest."

B. Has Stacy brought Deloitte employees to her apartment before? Who all, how many times and for what reason? I'm pretty sure the answer is yes for Vikram Rajan and Thor Schumacher. So it's more of a confirmation as well as identifying who else and how many times.

a. What Information do we currently know? When did we receive it, from whom and in what form did we receive it.
   ii. Based on the image and preservation of Stacy's Deloitte issued PDA, we have been able to confirm via text messages that fellow Deloitte colleagues have in fact been to Stacy's home. Stacy has confirmed with Leslie via a phone conversation on 6.22.2015 that Thor Schumacher had been to her home to do laundry.
b. What questions do we still need to ask and to whom we need to ask them?
   iii. N/A
c. What Deloitte policies apply? N/A

C. Has Stacy used her Deloitte issued corporate mobile phone/Lync to exchange text messages/IM's that not only are unrelated to legitimate business needs but also are sexually explicit or inappropriate? The text messages I've seen on her Deloitte mobile phone like "I want to eat you Stacy" from Vikram Rajan does not appear like a Deloitte business related text message to me.

a. What Information do we currently know? When did we receive it, from whom and in what form did we receive it.
   i. Based on the information received from the image and preservation of Stacy's Deloitte issued PDA on 6.18.2015 from Aleta Jacobson, we have been unable to confirm that any explicit text messages or pictures where sent or received to Stacy.
   ii. Based on the information received from the image and preservation of Stacy's Deloitte issued PDA on 6.18.2015 from Aleta Jacobson, we were unable to verify that a text from Virkam stating "I want to eat you Stacy" was sent to Stacy's Deloitte PDA via text.
   iii. Vikram informed Leslie via a phone conversation on 6.23.2015 that he was aware of a text message mentioned in the documentation that was taken out of context. Vikram told Leslie his and Stacy's conversation was taken out of context and was purely a PG conversation. Vikram said the text was: "Stacy I want to eat you." Vikram said the context of the text was he was very hungry and sent Stacy the text, saying "Stacy I want to eat you."

iv. Vikram indicated to Leslie that his friends all give him a hard time because he sends silly random texts to everyone not, just Stacy. He said it was not a meaningful text. It was a dumb text.
v. Vikram said he does take efforts to make sure that he does not send any inappropriate messages to Stacy because he knows she is using a combined personal and work phone.
vi. Leslie asked if he had record of the text. Vikram said he does not have record of the text. He thinks it is something to do with his phone settings. Vikram also said he does not believe that Stacy would have anything on her phone that would be anything like that. Vikram said it would be very peculiar, if she did.

b. What questions do we still need to ask and to whom we need to ask them?
iv. We need to ask Aleta Jacobson if she is able to recover text messages to and from Vikram Rajan on Stacy's PDA prior to May 14, 205.
v. Question to OGC: Do we need to check her Deloitte email and Lync to determine if she has sent or received any explicit email messages or Lync messages?
vi. Can Aleta check apps (e.g. Snapchat, OkCupid) on Stacy's Deloitte issued PDA for explicit material?

c. What Deloitte policies apply?
vii. APR 208 Electronic Communications:
1. .001 "The *Systems* and *Electronic Communications* are considered to be the property of the *U.S. Firms*, unless otherwise provided by law. While incidental and occasional personal use of the *Systems* is permitted in accordance with this policy, a *User* waives any claims to privacy as it relates to the use of the *Systems* and to the *Electronic Communications*. If a personal *Electronic Communication* is intended to be truly "confidential" or "privileged", alternative means of transmission should be used."
2. .007 Other Prohibited Activities: "Installing, using or downloading any unauthorized software, applications or technology services."

D. Is Stacy's statement made to me that Vikram Rajan had invited her for dates true? If so, do they still interact and what is the nature of that relationship?

a. What Information do we currently know? When did we receive it, from whom and in what form did we receive it.
iii. So both Stacy and Vikram have verbally told Leslie Garcia that they are seeing each other socially outside of work.
iv. Conversation with Stacy took place via the phone on 6.2.2015 and the conversation with Vikram took place via the phone on 6.23.2015.
v. Leslie Garcia confirmed that Stacy and Vikram do not work on the same engagement and/or firm initiatives (e.g. proposal/FPI/RFP) nor do they directly report to each other in any capacity. Both Stacy and Vikram are both Business Technology Analysts (BTA) within Federal Deloitte Consulting LLP. Stacy is

    aligned to the Federal Technology Information Management service line and Vikram is aligned to the Federal Technology System Integration service line.

b. What questions do we still need to ask and to whom we need to ask them?

vi. N/A

d. What Deloitte policies apply? APR 216 Nepotism

i. "The U.S. Firms prohibit situations where a *Related Person* either directly or indirectly: Manages, supervises, reviews or evaluates work performed by another *Related Person*, or Is responsible for, has influence on, or has control of related confidential information pertaining to the recruitment, hiring, admission, retention, evaluation, assignment, management, supervision, compensation, payment, training, transfer, promotion, demotion, discipline, termination or any other action that may result in the reward or disadvantage of another *Related Person*.

ii. For other situations involving *Related Persons* not expressly prohibited under this policy, the applicable U.S. Firm(s) may review, evaluate and determine the appropriateness of all such situations and take any steps, in their discretion, to address any situations that (a) have the potential for creating an adverse impact on the relevant operations or the workplace, (b) create problems of safety, security or morale, or (c) create either an actual conflict of interest or the appearance of a conflict of interest."

E. Does Stacy use her Deloitte corporate mobile phone for purposes that not only are irrelevant to Deloitte's legitimate business needs but also inappropriate such as dating apps (for example OkCupid)?

d. What Information do we currently know? When did we receive it, from whom and in what form did we receive it.

viii. Based on the information received from the image and preservation of Stacy's Deloitte issued PDA on 6.18.2015 from Aleta Jacobson, we have been unable to confirm that any explicit text messages or pictures where sent or received to Stacy.

e. What questions do we still need to ask and to whom we need to ask them?

ix. We need to ask Aleta Jacobson if she is able to recover text messages to and from Vikram Rajan on Stacy's PDA prior to May 14, 205.

x. Question to OGC: Do we need to check her Deloitte email and Lync to determine if she has sent or received any explicit email messages or Lync messages?

xi. Can Aleta check apps (e.g. Snapchat, OkCupid) on Stacy's Deloitte issued PDA for explicit material?

f. What Deloitte policies apply?

xii. APR 208 Electronic Communications:

1. .001 "The *Systems* and *Electronic Communications* are considered to be the property of the *U.S. Firms*, unless otherwise provided by law. While incidental and occasional personal use of the *Systems* is permitted in accordance with this policy, a *User* waives any claims to privacy as it relates to the use of the *Systems* and to the *Electronic Communications*. If a personal *Electronic Communication* is intended to be truly "confidential" or "privileged", alternative means of transmission should be used."

2. .007 Other Prohibited Activities: "Installing, using or downloading any unauthorized software, applications or technology services."

---

**Ranjith Keerikkattil's email entitled**

**"Stacy Sawin: Litigation Hold Notice for Documents and Electronic Data" on June 22, 2015**

Stacy Sawin

1. Any allegations of violations of Deloitte's policies made by Stacy Sawin and/or Ranjith Keerikkattil in written or oral form.
   a. Code of Ethics and Professional Code of Conduct

2. Any and all documents relating to any investigation conducted by Deloitte LLP in relation to any allegations made by Stacy Sawin and/or Ranjith Keerikkattil.
3. Any and all communications between Stacy Sawin and Ranjith Keerikkattil including communications where both parties have been copied.
4. Any and all communications between Stacy Sawin and Vikram Rajan, a Business Technology Analyst at Deloitte Consulting, including but not limited to any sexually explicit text messages and IM's exchanged between them.
5. Any and all documents relating to Stacy Sawin's dismissal from the U.S. Bureau of Engraving and Printing engagement while being employed with Deloitte LLP, including but not limited to drug test results and/or admissions made of controlled substance usage.

   a. On Friday, June 12, 2015 Alicia connect with Buddy White (FedSec Sr. Manager) regarding Stacy's clearance:
   "In Dorothy's absence I reached out to Buddy White and he provided me the following update on Stacy's clearance.
   "Stacy was processed through OPM and was not successful. She does not have any clearance noted at this time. We believe that Stacy is currently pending a suitability of access with Treasury."
   Thanks!
   Alicia"

   Stacy's Clearan

---

A. Any allegations of violations of Deloitte's policies or concerns made by you against me.
   a. Code of Ethics and Professional Code of Conduct
B. Any and all communications between you and me including communications where we both have been copied.

C. Any and all communications between you and Vikram Rajan, a Business Technology Analyst at Deloitte Consulting, including but not limited to any sexually explicit text messages and IM's exchanged such as "I want to eat you Stacy" on May 5, 2015.
   a. What Information do we currently know? When did we receive it, from whom and in what form did we receive it.
      i. Based on the information received from the image and preservation of Stacy's Deloitte issued PDA on 6.18.2015 from Aleta Jacobson, we have been unable to confirm that any explicit text messages or pictures where sent or received to Stacy.
      ii. Based on the information received from the image and preservation of Stacy's Deloitte issued PDA on 6.18.2015 from Aleta Jacobson, we were unable to verify that a text from Virkam stating "I want to eat you Stacy" was sent to Stacy's Deloitte PDA via text.
      iii. Vikram informed Leslie via a phone conversation on 6.23.2015 Vikram

      iv. that the statement "I want to eat you Stacy" was a random text message due to the fact he was hungry.
   b. What questions do we still need to ask and to whom we need to ask them?
      xiii. We need to ask Aleta Jacobson if she is able to recover text messages to and from Vikram Rajan on Stacy's PDA prior to May 14, 205.
      xiv. Question to OGC: Do we need to check her Deloitte email and Lync to determine if she has sent or received any explicit email messages or Lync messages?
      xv. Can Aleta check apps (e.g. Snapchat, OkCupid) on Stacy's Deloitte issued PDA for explicit material?
   c. What Deloitte policies apply?
      xvi. APR 208 Electronic Communications:
         1. .001 "The *Systems* and *Electronic Communications* are considered to be the property of the *U.S. Firms*, unless otherwise provided by law. While incidental and occasional personal use of the *Systems* is permitted in accordance with this policy, a *User* waives any claims to privacy as it relates to the use of the *Systems* and to the *Electronic Communications*. If a personal *Electronic Communication* is intended to be truly "confidential" or "privileged", alternative means of transmission should be used."
         2. .007 Other Prohibited Activities: "Installing, using or downloading any unauthorized software, applications or technology services."
B. Any and all documents relating to your dismissal from the U.S. Bureau of Engraving and Printing engagement while being employed with Deloitte.
   a. On Friday, June 12, 2015 Alicia connect with Buddy White (FedSec Sr. Manager) regarding Stacy's clearance:
      "In Dorothy's absence I reached out to Buddy White and he provided me the following update on Stacy's clearance.
      "Stacy was processed through OPM and was not successful. She does not have any clearance noted at this time. We believe that Stacy is currently pending a suitability of access with Treasury."

Thanks!
Alicia"

Stacy's Clearan

C. Information contained within "Snapchat", "OkCupid" and any other non---employment related apps that are installed in your Deloitte corporate phone.
D. Any and all communications between you and Thor Schumacher, Business Technology Analyst, Deloitte Consulting (to whom you had asked to take his clothes away from your apartment on May 28, 2015 at the Deloitte Arlington Office's 15th floor lounge).
E. Any and all communications between you and other male Deloitte employees who have visited your apartment or whose residence you've visited.
F. Your Deloitte timesheets from February 27, 2015 onwards.
G. Any and all documents relating to your illegal drug use history including but not limited to declarations made to U.S. Bureau of Engraving and Printing, Deloitte, Lehigh University and Lakeridge High School, Lake Oswego, OR.